# 21-975

IN THE

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

*FOR THE SECOND CIRCUIT*

ESTER LELCHOOK, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID MARTIN LELCHOOK, MICHAEL LELCHOOK, YAEL LELCHOOK, ALEXANDER LELCHOOK, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DORIS LELCHOOK, MALKA KUMER, CHANA LIBA KUMER, MIRIAM ALMACKIES, CHAIM KAPLAN, RIVKA KAPLAN, BRIAN ERDSTEIN, KARENE ERDSTEIN, MA'AYAN ERDSTEIN, CHAYIM KUMER, NECHAMA KUMER, LAURIE RAPPEPORT, MARGALIT RAPPEPORT, THEODORE (TED) GREENBERG, MOREEN GREENBERG, JARED SAUTER, DVORA CHANA KASZEMACHER, CHAYA KASZEMACHER ALKAREIF, AVISHAI REUVANE, ELISHEVA ARON, YAIR MOR, MIKIMI STEINBERG,

*Plaintiffs-Appellants,*

*v.*

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN S.A.L.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the Eastern District of New York*

## PETITION FOR REHEARING EN BANC

BRIAN J. LESKE
MICHAEL J. SULLIVAN
ASHCROFT LAW FIRM, LLC
200 State Street, 7th Fl.
Boston, MA 02109
(617) 573-9400

*Attorneys for Defendant-Appellee*
*Société Générale de Banque*
*au Liban S.A.L.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

RULE 40(b) STATEMENT ...................................................................................... 1

STATEMENT OF THE CASE ................................................................................. 4

    *Statement of Facts* ........................................................................................... 4

    *Procedural History* ......................................................................................... 6

ARGUMENT ........................................................................................................... 7

I.     THE PANEL OPINION CONFLICTS WITH CIRCUIT LAW .................... 7

    A. Well-Settled Circuit Law Permits Personal Jurisdiction
        Based Upon Another's Contacts *Only* Where the Persons
        or Entities Are "One Entity" or the "Same Entity" .............................. 8

    B. This Circuit's Rule Ensures the Exercise of Specific Personal
        Jurisdiction Is Consistent with the Due Process Clause
        and Supreme Court Precedent Interpreting It .....................................10

    C. The Exercise of Specific Personal Jurisdiction Over an
        Asset-and-Liability Purchaser like SGBL Does Not Comport
        with Constitutional Due Process ......................................................... 11

II.    SGBL LACKS MINIMUM CONTACTS WITH NEW YORK .................. 12

III.  THE PANEL OPINION POSES RISKS TO
     INTERNATIONAL COMITY ...................................................................14

CONCLUSION .......................................................................................................16

CERTIFICATE OF COMPLIANCE .....................................................................17

*Panel Opinion Appended*

# TABLE OF AUTHORITIES

**Cases**

*Bartlett v. Société Générale De Banque Au Liban SAL, No. 19-cv-00007
(CBA) (VMS), 2020 U.S. Dist. LEXIS 229921 (E.D.N.Y. Nov. 25, 2020)* ......... 3

*Berkman v. Ann Lewis Shops, Inc.*,
246 F.2d 44 (2d Cir. 1957) ................................................................... 9

*BRG Corp. v. Chevron U.S.A., Inc.*,
163 A.D.3d 1495 (4th Dep't 2018) ....................................................... 6

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .............................................................. 2, 13, 16

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003) ................................................................. 12

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) .................................................................. 8

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984) ............................................................................ 8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ...................................................................*passim*

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) ............................................................................ 3

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025) .............................................................................. 10

*In re Platinum & Palladium Antitrust Litig.*,
61 F.4th 242 (2d Cir. 2023) *cert. denied sub nom. BASF Metals Ltd. v.
KPFF Inv., Inc.*, 144 S. Ct. 681 (2024) ............................................... 2

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ...................................................................*passim*

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ...................................................................... 14

*Kaplan v. Lebanese Can. Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ............................................................ 5

*Kulko v. Superior Court of Cal.*,
436 U.S. 84 (1978) ....................................................................... 10

*Lelchook v. Société Générale de Banque au Liban SAL*,
No. 19-cv-33 (RJD) (SJB), 2021 U.S. Dist. LEXIS 206270
(E.D.N.Y. Mar. 31, 2021) ......................................................*passim*

*Lelchook v. Société Générale de Banque au Liban SAL*,
41 N.Y.3d 629 (2024) ................................................................ 6, 7

*Lelchook v. Société Générale de Banque au Liban SAL*,
67 F.4th 69 (2d Cir. 2023) ....................................................*passim*

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
673 F.3d 50 (2d Cir. 2012) ............................................................ 5

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
732 F.3d 161 (2d Cir. 2013) ................................................ 6, 13, 14

*Licci v. American Express Bank Ltd.*,
704 F. Supp. 2d 403 (S.D.N.Y. 2010) ........................................ 4, 5

*Licci v. Lebanese Can. Bank, SAL*,
20 N.Y.3d 327 (2012) ................................................................... 6

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023) ............................................................... 10, 12

*New York v. Nat'l Serv. Indus., Inc.*,
460 F.3d 201 (2d Cir. 2006) ........................................................ 12

*Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (México) S.A.
Institución de Banca Multiple*,
92 F.4th 450 (2d Cir. 2024) ...................................................... 9, 12

iii

*Patin v. Thoroughbred Power Boats Inc.*,
 294 F.3d 640 (5th Cir. 2002) ................................................................. 9

*Rush v. Savchuk*,
 444 U.S. 320 (1980) ........................................................................... 10

*Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC*,
 22 F.4th 103 (2d Cir. 2021) ................................................................ 8

*Sunward Elecs., Inc. v. McDonald*,
 362 F.3d 17 (2d Cir. 2004) ................................................................ 15

*Transfield ER Cape Ltd. v. Industrial Carriers, Inc.*,
 571 F.3d 221 (2d Cir. 2009) ............................................................ 8, 9

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
 916 F.3d 143 (2d Cir. 2019) ...................................................... 7, 8, 11

*Walden v. Fiore*,
 571 U.S. 277 (2014) ........................................................................... 11

*Waldman v. PLO*,
 835 F.3d 317 (2d Cir. 2016) ........................................................... 2, 13

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*,
 933 F.2d 131 (2d Cir. 1991) ............................................................... 8

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ......................................................................... 15

**Statutes**

Anti-Terrorism Act, 18 U.S.C. § 2333 ............................................... 4, 5

Justice Against Sponsors of Terrorism Act,
 Pub. L. No. 114-222, § 4(d), 130 Stat. 852 (2016)......................... 5, 15

NY CPLR § 302(a) (2010) ..................................................................... 6

# RULE 40(b) STATEMENT

This appeal raises an interesting issue of first impression in this Circuit and (ironically) creates an intra-circuit conflict in the process.

The panel opinion adopts a brand-new, categorical rule that equates a defendant's alleged forum liability with personal jurisdiction by imputing the contacts of a "predecessor" whenever the forum's law would hold the "successor" liable. Ex. A (certified opinion) at 17 ("Op.") ("agree[ing] with and apply[ing]" an out-of-circuit successor personal jurisdiction rule "that if forum law could also hold the successor liable for its predecessor's actions, its related jurisdictional actions should also attach to the successor"). The panel concludes that the exercise of specific jurisdiction on this basis comports with constitutional due process, even where (as here) the two entities are distinct and have no corporate relationship— past, present, or future—beyond a single, foreign asset-and-liability purchase agreement. Op.17.

The decision in this case conflicts with a very long line of Circuit cases that hold that personal jurisdiction based on another party's contacts comports with constitutional due process only where the persons or entities have an agency relationship or are "one" or "the same" entity, such that the jurisdictional contacts of one *are* the jurisdictional contacts of the other. *See infra* at pp. 8–9 (collecting cases). This analytic rule ensures that the exercise of personal jurisdiction satisfies

the bedrock principle emanating from *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), that the "substantial relationship" between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum." *Waldman v. PLO*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original); *see Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) (recognizing "[a] corporation is a distinct legal entity that can act only through its agents" and therefore it "can purposefully avail itself of a forum by directing its agents or distributors to take action there") (citation omitted). The panel gives short shrift to this Circuit's due process touchstone, mislabeling it instead a "policy consideration[]" and a "policy argument[]." Op.30 & n.20.

This constitutional issue is not new to this Court. *See*, *e.g.*, *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 272, 273 n.10 (2d Cir. 2023) (suggesting "conspiracy jurisdiction" violates due process because the purposes of personal jurisdiction and liability "are opposed") (citations and quotations omitted), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*, 144 S. Ct. 681 (2024). Nor do district courts agree with the panel's jurisdictional equivalence theory. *Lelchook v. Société Générale de Banque au Liban SAL*, No. 19-cv-33 (RJD) (SJB), 2021 U.S. Dist. LEXIS 206270, at *8 (E.D.N.Y. Mar. 31, 2021) ("*Lelchook I*") (Judge Dearie observes "[j]urisdiction and liability are of course two distinct considerations" and

"the non-culpable purchaser of assets and liabilities does not fall within the court's jurisdiction merely by virtue of that transaction"); *Bartlett v. Société Générale De Banque Au Liban SAL*, No. 19-cv-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921, at *77 (E.D.N.Y. Nov. 25, 2020) (Judge Amon observes "[e]ven if [a purchaser] obtained all of [a seller's] liabilities, that does not necessarily confer jurisdiction").

Finally, the panel opinion "pa[ys] little heed to the risks to international comity," *Daimler AG*, 571 U.S. at 141, by denying a foreign corporation the invocation of its due process protections because it may deprive U.S. plaintiffs of a potential recovery. Op.25 (finding non-resident defendant should not "be allowed to invoke a putative jurisdictional barrier" to avoid potential liabilities in forum). The new, expansive jurisdictional theory additionally undermines settled expectations of businesses throughout the world and therefore may lead to "international friction." *Daimler AG*, 571 U.S. at 142.

This Court sitting *en banc* should consider this case to help bring consistency and clarity to this important area of Circuit law. It also would allow the entire Court to weigh carefully any new rule that jurisdiction travels with liability—a rule that (at best) pays only lip service to *International Shoe's* "canonical" minimum-contacts requirement. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021).

# STATEMENT OF THE CASE

## *Statement of Facts*

This is a successor liability case involving claims under the Anti-Terrorism Act ("ATA"). Plaintiffs—victims of terrorist attacks and their estates and family members—do not allege that Defendant-Appellee Société Générale de Banque au Liban S.A.L. ("SGBL") committed or supported terrorism. Instead, Plaintiffs contend that a different, unrelated entity, Lebanese Canadian Bank ("LCB"), supported the attacks through its provision of banking services. Nor do Plaintiffs allege that SGBL is subject to the personal jurisdiction in New York because of its own contacts. As their sole basis for personal jurisdiction, Plaintiffs again point to LCB, claiming that SGBL "inherited" LCB's jurisdictional status when it allegedly acquired all of LCB's assets and liabilities in 2011 following a competitive bidding process sponsored by the Lebanese Central Bank.

Beginning in 2008, LCB faced legal trouble in the United States. That year, plaintiffs sued LCB, claiming that it had laundered money for Hezbollah. *See Licci v. American Express Bank Ltd.*, 704 F. Supp. 2d 403 (S.D.N.Y. 2010) ("*Licci I*"). Based on that alleged violation, the plaintiffs claimed that LCB had committed an "act of international terrorism" in violation of the ATA, 18 U.S.C. § 2333(a). In addition, in early 2011, the U.S. Department of the Treasury designated LCB as a financial institution of "primary money laundering concern" and proposed a rule

preventing LCB from using correspondent accounts in the United States. A83. This precipitated LCB's sale abroad—a transaction the United States approved, with the Government calling SGBL a "responsible owner" and agreeing it would not bring claims against SGBL under a successor liability theory. A79, 84.

LCB continues to exist and to defend itself from ATA claims in the so-called *Licci/Kaplan* litigation. This Court has dismissed the primary ATA liability claim in that case. *See Kaplan v. Lebanese Can. Bank, SAL*, 999 F.3d 842, 853 (2d Cir. 2021). The new theory is that LCB is liable as an aider and abettor of terrorist acts. That claim did not exist until 2016 when Congress enacted the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, § 4(d), 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. § 2333(d)). SGBL is not a party to that litigation.

Other than SGBL's one-time payment of $580,000,000.00 cash to LCB under the Lebanese sales and purchase agreement (the "SPA"), the two banks have no corporate relationship and there is no overlap in ownership. Nor is there any allegation that the sale was a sham transaction or designed to avoid liability or jurisdiction.[1]

_____

[1] In fact, LCB itself was *not* subject to personal jurisdiction in New York at the time of SGBL's asset-and-liability purchase. *See Licci I*, 704 F. Supp. 2d at 408 (dismissing LCB for lack of jurisdiction). In the year following the transaction, this Court considered plaintiffs' appeal in *Licci I* and found it could not predict whether LCB's use of correspondent bank accounts in New York gave rise to personal jurisdiction under New York's long-arm statute, so it certified the question to the New York Court of Appeals. *See Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012) ("*Licci II*"). That Court held that allegations of a "foreign bank's repeated use of a correspondent account in New York" was sufficient to "show purposeful availment of

## Procedural History

Plaintiffs filed this lawsuit in the U.S. District Court for the Eastern District of New York in January 2019.[2] SGBL moved to dismiss for lack of personal jurisdiction, and the district court granted the motion. *Lelchook I*, 2021 U.S. Dist. LEXIS 206270, at *8. Judge Dearie held that Plaintiffs failed to plead "any connection between SGBL and the forum." *Id.* at *7–8. In rejecting Plaintiffs' argument that assuming LCB's liabilities subjected SGBL to jurisdiction, he reasoned "[j]urisdiction and liability are … two distinct considerations," so an allegation of successor liability "does not address whether SGBL is subject to jurisdiction in New York." *Id*. at *6.

Plaintiffs appealed. The panel's first opinion in this case surveyed state and federal decisions and concluded it could not "predict with confidence" whether the

---

New York's" financial system. *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 339 (2012) ("*Licci III*"). Based on that holding, this Court concluded that the exercise of specific personal jurisdiction over LCB in New York comported with due process because the activity forming the basis for jurisdiction "occur[ed] *within* the forum." *See Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 167–74 (2d Cir. 2013) ("*Licci IV*") (emphasis in original).

Nor did New York recognize "successor jurisdiction" at the time of the transaction and there was no reason to believe it would. NY CPLR 302(a) (2010) (long-arm statute limits imputation to agents); *Lelchook v. Société Générale de Banque au Liban SAL*, 67 F.4th 69, 80 (2d Cir. 2023), *certified question accepted*, 39 N.Y.3d 1146 (2023) ("*Lelchook II*") (finding issue is "'novel and unsettled'" in New York) (quoting *BRG Corp. v. Chevron U.S.A., Inc.*, 163 A.D.3d 1495, 1496 (4th Dep't 2018)); Op.19 (observing "[f]ew courts have considered" the circumstances here). Asset-and-liability purchasers only became subject to jurisdiction in New York as a result of this case—thirteen years later (and counting). *Lelchook v. Société Générale de Banque au Liban SAL*, 41 N.Y.3d 629, 638–39 (2024) ("*Lelchook III*") (answering certified question).

[2] Plaintiffs are pursuing LCB separately in the Southern District. Am. Compl., *Lelchook v. Lebanese Can. Bank SAL*, No. 1:18-cv-12401 (GBD) (KHP) (S.D.N.Y. May 9, 2022).

New York law would recognize Plaintiffs' theory. It found the jurisdictional question "depends on the basis of the successor liability" and the issue fell in "the cloudy middle ground" between mergers—where successor jurisdiction has been approved by some courts—and asset sales—where it has not. *Lelchook II*, 67 F.4th at 77, 81–82 (quoting dicta in *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 155–56 (2d Cir. 2019) ("*U.S. Bank*")). It accordingly certified that question.

The New York Court of Appeals accepted the question. It held fairness and public policy factors "tip in favor of allowing successor jurisdiction where a successor purchases all assets and liabilities." *Lelchook III*, 41 N.Y.3d at 637.

Following short supplemental letter-briefs (Dkts. 88, 89) and without oral argument, the panel reversed. The panel opinion adopts a new Circuit rule that personal jurisdiction travels with successor liability. Op.17. The panel opinion concludes that the exercise of specific jurisdiction over SGBL in New York on this basis comports with constitutional due process. *Id*. at 20.

## ARGUMENT

## I. THE PANEL OPINION CONFLICTS WITH CIRCUIT LAW

The exercise of personal jurisdiction over SGBL, a non-culpable asset-and-liability purchaser that has no connection or continuing relationship with the seller, does not comport with the Fourteenth Amendment. In reaching a contrary conclusion, the panel opinion misconstrues Circuit precedent.

**A.**     **Well-Settled Circuit Law Permits Personal Jurisdiction Based Upon Another's Contacts *Only* Where the Persons or Entities Are "One Entity" or the "Same Entity"**

This Circuit permits the exercise of specific personal jurisdiction based on another's contacts with the forum *only* where the persons or entities have an agency relationship or are "one entity" or the "same entity." This Circuit has applied this rule for over sixty years, including as recently as last year. *See*, *e.g.*, *Transfield ER Cape Ltd. v. Industrial Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (exercise of alter ego jurisdiction comports with due process because "'*alter egos* are treated as one entity' for jurisdictional purposes") (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 142–43 (2d Cir. 1991)); *U.S. Bank,* 916 F.3d at 155–56 (exercise of merger jurisdiction comports with due process "[b]ecause a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation"); *Schwab Short-Term Bond Mkt. Fund v. Lloyds Banking Grp. PLC* ("*Schwab II*"), 22 F.4th 103, 122 (2d Cir. 2021) (exercise of conspiracy jurisdiction comports with due process because "[i]n any conspiracy, two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit") (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)); *Charles Schwab Corp. v. Bank of Am. Corp.* ("*Schwab I*"), 883 F.3d 68 (2d Cir. 2018) (exercise of agency jurisdiction comports with due process because a corporate defendant acts only through its

agents) (citing *Daimler AG*, 571 U.S. at 135 n.13); *see Berkman v. Ann Lewis Shops, Inc.*, 246 F.2d 44, 48 (2d Cir. 1957) (rejecting jurisdictional imputation because "the two were not merely principal and agent in one organization"); *Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (México) S.A. Institución de Banca Multiple*, 92 F.4th 450, 457–58 (2d Cir. 2024) (permitting jurisdictional imputation *only after* "the brokers are established as Defendants' agents"). SGBL is not aware of a single Circuit case deviating from this approach.

To explain why its rule comports with due process, this Circuit adopts the reasoning in *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640 (5th Cir. 2002). *See Transfield ER Cape Ltd.*, 571 F.3d at 224 (observing "it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court") (quoting *Patin*, 294 F.3d at 653 (collecting cases)). The *Patin* court explains: "The theory underlying these [collected] cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity,* the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Patin*, 294 F.3d at 653 (emphasis in original).

**B.** **This Circuit's Rule Ensures the Exercise of Specific Personal Jurisdiction Is Consistent with the Due Process Clause and Supreme Court Precedent Interpreting It**

This Circuit's analytic rule safeguards *International Shoe's* bedrock principle that the minimum-contact analysis "must be met as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 322 (1980). It is not simply a "policy consideration[]." Op.30.

There are only three theories under which a federal court may exercise personal jurisdiction over a foreign defendant: consent, general jurisdiction, and specific jurisdiction, *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137-38 (2023) (plurality). Here, the exercise of jurisdiction must satisfy the due process standards applicable to specific jurisdiction—there is no fourth, standalone jurisdictional basis arising from a defendant's status as a "successor" or its assumption of another's liabilities or based on fairness principles coupled with a modicum of forum contacts. *See Kulko v. Superior Court of Cal.*, 436 U.S. 84, 96 (1978) (reversing state court because it "confuses the question of appellant's liability with that of the proper forum in which to determine that liability").

The applicable due process analysis under the Fourteenth Amendment is not a "flexible" one. *See Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 16 (2025) ("the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry"); *Lelchook II*, 67 F.4th at 74–76 (Plaintiffs rely solely on Federal Rule of Civil

Procedure 4(k)(1)). Instead, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties . . . and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Nor has it *ever* endorsed *any* jurisdictional theory based on another's contacts save an agency relationship. *Daimler AG,* 571 U.S. at 135 n.13.

This Circuit's rule—which, in successor cases, "depends on the basis of the successor liability," *U.S. Bank*, 916 F.3d at 156— satisfies this standard. Where the "successor" and "predecessor" are the same—as with a corporate reorganization or merger, or where a parent and subsidiary are *alter egos*, or a defendant continues as the predecessor with continuity of ownership—one entity's jurisdictional contacts *are* the other's contacts for due process purposes.

## C. The Exercise of Specific Personal Jurisdiction Over an Asset-and-Liability Purchaser like SGBL Does Not Comport with Constitutional Due Process

Applying this Circuit's rule yields an easy answer. The exercise of specific personal jurisdiction over a non-consenting, asset-and-liability purchaser (like SGBL) does not comport with due process because the purchaser did not direct the seller to take action in New York and the two are distinct entities following an "all-cash transaction from which both continue to survive." *Lelchook I*, 2021 U.S. Dist. LEXIS 206270, at *6; *see Lelchook II*, 67 F.4th at 78 ("Plaintiffs do not allege that SGBL and LCB are 'one and the same'"); *see also id*. at 85 n.23 (suggesting same).

11

The panel's observation that "[a]lthough LCB still formally exists as a separate entity, SGBL's acquisition resembles a merger in key respects" does not alter this conclusion for two reasons. Op.30. *First*, it conflicts with Circuit precedent. The "essence of a merger" is not that the merged entity is subject to all liabilities of the acquired company but rather is a "continuity of ownership"—which is absent in this all-cash transaction. *New York v. Nat'l Serv. Indus., Inc.*, 460 F.3d 201, 212 (2d Cir. 2006) (Sotomayer, J.); *see also Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 46–47 (2d Cir. 2003) (without "continuity of ownership" the asset purchase was not "a merger . . . called something else").

*Second*, this Circuit does not endorse a malleable approach. This Court, for example, has never found the exercise of personal jurisdiction to be constitutional because a third party "resembles" an agent. To the contrary, the sole Circuit case the panel opinion relies upon did *not* apply a "form-over-substance rule" and instead found jurisdiction to be proper only *after*—"[o]nce"—the Court "established" third parties "as Defendants' agents." *Oklahoma Firefighters*, 92 F.4th at 458; *accord Mallory*, 600 U.S. at 145 ("a legion of precedents [] attach jurisdictional consequences to what some might dismiss as mere formalities").

## II. SGBL LACKS MINIMUM CONTACTS WITH NEW YORK

The panel finds: "Plaintiffs proceed solely on a successor theory of jurisdiction." Op.17; *Lelchook I*, 2021 U.S. Dist. LEXIS 206270, at *7–8 (Plaintiffs'

complaint "failed to allege any connection between SGBL and the forum."). Nonetheless, it adopts arguments raised for the first time in Plaintiffs' supplemental letter-brief (Dkt. 88) and concludes SGBL's *own* contacts support the exercise of specific jurisdiction in New York—the Lebanese SPA itself. Even if properly considered, there is no conduct here that satisfies due process's "purposeful availment" requirement.

*First*, according to the panel, "[e]ntering into the Agreement represented SGBL's choice to obtain LCB's assets and to answer for LCB's activities" and "that choice properly forms the basis for a court to impute LCB's contacts to SGBL." Op.20. Respectfully, "choice" in this context is just another way of saying SGBL *consented to* jurisdiction, which is a theory "Plaintiffs here did not advance." Op.23 n.15. Otherwise, the statement is circular and restates the constitutional problem— SGBL's assumption of liability subjects it to jurisdiction.

*Second*, an out-of-state contract may provide a basis for personal jurisdiction in certain circumstances—but not here. Op.20 (citing *Burger King*, 471 U.S. at 479–80). The SPA does not create any "continuing and wide-reaching contacts" with a New York corporation—let alone "substantial" ones. *Burger King*, 471 U.S. at 480, 487. Nor does it contemplate any activities by SGBL even arguably "*within* the forum"—let alone "significant" ones. *Id*. at 476; *Waldman*, 835 F.3d at 342 (quoting *Licci IV*, 732 F.3d at 173) (emphasis in original).

LCB's assets (allegedly acquired by SGBL) do not include any "operations, branches, or employees in the United States" and all are located abroad—save New York correspondent bank accounts that exist to "facilitate the flow of money." *Licci IV*, 732 F.3d at 165 n.3. The "mere maintenance" of those accounts, however, is insufficient to "show purposeful availment" in New York, *see id.* at 168, 171, so SGBL's "mere acquisition" of them surely does not either.[3] And, of course, a foreign purchaser that allegedly assumes *all* assets and liabilities of another foreign corporation *all over the world* does not "expressly aim[]" its conduct at New York (as opposed to any other place). *Licci IV*, 732 F.3d at 172–73; *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882 (2011) (plurality) (personal jurisdiction is proper "only where the defendant can be said to have targeted the forum").

## III. THE PANEL OPINION POSES RISKS TO INTERNATIONAL COMITY

Finally, the panel's holding—if left uncorrected—would undermine important due process and international comity principles in two ways.

*First*, the panel finds the exercise of jurisdiction over SGBL comports with due process because it was reasonably foreseeable in 2011 that SGBL would be subject to suit in New York in 2019 on the specific claims asserted here. Op.22

---

[3] Treasury's designation of LCB, *see* pp. 4–5, *supra*, also would have had the effect of immediately blocking or "freezing" any U.S.-based assets. *See Basic Information on OFAC and Sanctions*, U.S. Treasury Dept., https://ofac.treasury.gov/faqs/topic/1501 (last visited Sept. 19, 2025).

(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). It reaches this conclusion notwithstanding:

> (a) the rejection of personal jurisdiction over LCB in New York before the transaction by one U.S. trial court judge;
>
> (b) the uncertainty expressed by six U.S. appellate court judges regarding multiple facets of New York jurisdictional law;
>
> (c) the panel's own recognition that "[f]ew courts" had even considered the question at the time; and
>
> (d) the rejection of successor personal jurisdiction in New York over asset-and-liability purchasers like SGBL by two U.S. trial court judges.

Op.19; *see supra* n.1. In addition, Plaintiffs only remaining claims against LCB are secondary-liability claims under JASTA, which was enacted *in 2016*, *see* 130 Stat. at 854. These claims therefore were not only unforeseen when SGBL contracted with LCB—they were unforeseeable. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to each claim asserted") (emphasis in original).

The panel's answer is to deny SGBL the benefit of due process's foreseeability requirement. It reasons that "due process does not require that SGBL be allowed to invoke a putative jurisdictional barrier and avoid one set of LCB's potential liabilities" to the U.S. plaintiffs here. Op.25. But that gets it exactly backwards. Due process principles—and especially constraints on personal jurisdiction, *i.e.*, the power of state and federal courts to render judgments—exist to

*protect* non-resident defendants. Rather than reinforce principles of international comity, the due process analysis here threatens them.

*Second*, this Circuit's new, expansive jurisdictional rule may burden federal courts with a myriad of claims against alleged foreign "successors" that have little or no meaningful connection to the forum. These entities also may have little or no knowledge of the liability that brought them here. After all, the reality is that no matter the level of due diligence, buyers will never know in advance everywhere a seller may be sued and therefore what "conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 472.

## CONCLUSION

This Court should grant the petition for rehearing *en banc*.


Dated: September 24, 2025                    Respectfully submitted,


                                             /s/ *Brian J. Leske*
                                             Brian J. Leske
                                             Michael J. Sullivan
                                             ASHCROFT LAW FIRM, LLC
                                             200 State Street, 7th Floor
                                             Boston, MA 02109
                                             617-573-9400
                                             bleske@ashcroftlawfirm.com
                                             msullivan@ashcroftlawfirm.com

                                             *Attorneys for Defendant-Appellee*
                                             *Société Générale de Banque*
                                             *au Liban S.A.L.*

## CERTIFICATE OF COMPLIANCE

I hereby certify this Petition complies with the type-volume limit of Federal Rule of Appellate Procedure 40(d)(3)(A) because it contains 3,900 words, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f).

This petition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 2025 in 14-point, Times New Roman font.

Dated: September 24, 2025                          Respectfully submitted,

<div style="margin-left:50%">

*/s/ Brian J. Leske*
Brian J. Leske
Michael J. Sullivan
ASHCROFT LAW FIRM, LLC
200 State Street, 7th Floor
Boston, MA 02109
617-573-9400
bleske@ashcroftlawfirm.com
msullivan@ashcroftlawfirm.com

*Attorneys for Defendant-Appellee*
*Société Générale de Banque*
*au Liban S.A.L.*

</div>

# EXHIBIT A

21-975
*Lelchook v. Société Générale de Banque au Liban S.A.L.*

<div align="center">

𝔍𝔫 𝔱𝔥𝔢
𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔠𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔉𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔠𝔦𝔯𝔠𝔲𝔦𝔱

———————

August Term, 2021

(Argued: May 17, 2022    Decided: August 11, 2025)

Docket No. 21-975

———————

</div>

ESTER LELCHOOK, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID MARTIN LELCHOOK, MICHAEL LELCHOOK, YAEL LELCHOOK, ALEXANDER LELCHOOK, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DORIS LELCHOOK, MALKA KUMER, CHANA LIBA KUMER, MIRIAM ALMACKIES, CHAIM KAPLAN, RIVKA KAPLAN, BRIAN ERDSTEIN, KARENE ERDSTEIN, MA'AYAN ERDSTEIN, CHAYIM KUMER, NECHAMA KUMER, LAURIE RAPPEPPORT, MARGALIT RAPPEPORT, THEODORE (TED) GREENBERG, MOREEN GREENBERG, JARED SAUTER, DVORA CHANA KASZEMACHER, CHAYA KASZEMACHER ALKAREIF, AVISHAI REUVANE, ELISHEVA ARON, YAIR MOR, MIKIMI STEINBERG,

<div align="right">

*Plaintiffs-Appellants,*

</div>

<div align="center">

–v.–

</div>

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN S.A.L.,

<div align="right">

*Defendant-Appellee.*[*]

</div>

B e f o r e :

———————

[*] The Clerk of Court is directed to amend the case caption to conform to the above.

CERTIFIED COPY ISSUED ON 08/11/2025

RAGGI, WESLEY, and CARNEY, *Circuit Judges*.

———————

Plaintiffs-Appellants are U.S. citizens who were harmed in Hizbollah rocket attacks carried out in Israel in 2006, and the estate and family members of one U.S. citizen who was killed in such an attack. They assert that Defendant-Appellee Société Générale de Banque au Liban S.A.L. ("SGBL") is liable as the successor to non-party Lebanese Canadian Bank ("LCB") for damages stemming from the attacks. Plaintiffs' theories of liability and jurisdiction with regard to SGBL rest on SGBL's acquisition of all of the assets and liabilities of LCB in 2011 in a transaction that was not a formal merger under New York law.

The district court granted SGBL's motion to dismiss for lack of personal jurisdiction. *Lelchook v. Société Générale de Banque au Liban SAL*, No. 19-cv-33, 2021 WL 4931845 (E.D.N.Y. Mar. 31, 2021) ("*Lelchook I*"). It concluded that New York law allows a successor corporation to inherit its predecessor's jurisdictional status only where the two corporate entities had merged in accordance with state law. *Id.* at *2–3; *see* N.Y. Bus. Corp. Law § 901 *et seq.* (describing merger requirements). Without such a merger, the court thought, LCB's jurisdictional status would not transfer to SGBL. *Lelchook I*, 2021 WL 4931845, at *2–3.

On Plaintiffs' appeal of that decision, we first concluded that we could not predict with confidence how the New York Court of Appeals would resolve the jurisdictional question of inheritability on which the district court's decision turned. *Lelchook v. Société Générale de Banque au Liban SAL*, 67 F.4th 69, 71–72 (2d Cir.), *certified question accepted*, 39 N.Y.3d 1146 (2023). We therefore certified the question to that court. *Id.* at 71–72, 88–89. On review, the Court of Appeals clarified that, under New York's long-arm statute, "where an entity acquires all of another entity's liabilities and assets, but does not merge with that entity, it inherits the acquired entity's status for purposes of specific personal jurisdiction." *Lelchook v. Société Générale de Banque au Liban SAL*, 41 N.Y.3d 629, 638–39 (2024).

With the benefit of that decision, we now hold that SGBL is subject to the specific personal jurisdiction of New York courts for purposes of adjudicating the claims presented by Plaintiffs. We further decide that the exercise of that jurisdiction here comports with federal due process principles. Key to our reasoning are the observations first, that SGBL deliberately acquired assets and liabilities of LCB that were generated in New York; second, that it was foreseeable at the time of the acquisition that SGBL would become subject to the exercise of jurisdiction in New York, such that SGBL should reasonably have anticipated that possibility; and finally, that the exercise of specific jurisdiction over SGBL in these circumstances comports with due process because it does not offend traditional notions of fair play and substantial justice. We

therefore **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____

ROBERT J. TOLCHIN (Gary M. Osen, Michael Radine, Osen LLC, Hackensack, NJ, *also appearing*), The Berkman Law Office, LLC, Brooklyn, NY, *for Plaintiffs-Appellants*.

BRIAN J. LESKE (Michael J. Sullivan, *on the brief*), Ashcroft Law Firm, LLC, Boston, MA, *for Defendant-Appellee*.

_____

CARNEY, *Circuit Judge*:

Plaintiffs-Appellants are U.S. citizens who were harmed in Hizbollah rocket attacks carried out in Israel in 2006, and the estate and family members of one U.S. citizen who was killed in such an attack. They assert that Defendant-Appellee Société Générale de Banque au Liban S.A.L. ("SGBL") is liable as the successor to non-party Lebanese Canadian Bank S.A.L. ("LCB") for damages stemming from the attacks. Plaintiffs' theories of liability and jurisdiction with regard to SGBL rest on SGBL's acquisition of all of the assets and liabilities of LCB in 2011 in a transaction that was not a formal merger under New York law.

The district court granted SGBL's motion to dismiss for lack of personal jurisdiction. *Lelchook v. Société Générale de Banque au Liban SAL*, No. 19-cv-33, 2021 WL 4931845 (E.D.N.Y. Mar. 31, 2021) ("*Lelchook I*"). It concluded that New York law allows a successor corporation to inherit its predecessor's jurisdictional status only where the two corporate entities had merged in accordance with state law. *Id.* at *2–3; see N.Y. Bus. Corp. Law § 901 *et seq.* (describing merger requirements). Without such a merger, the

3

court thought, LCB's jurisdictional status would not transfer to SGBL. *Lelchook I*, 2021 WL 4931845, at *2–3.

On Plaintiffs' appeal of that decision, we first concluded that we could not predict with confidence how the New York Court of Appeals would resolve the jurisdictional question of inheritability on which the district court's decision turned. *Lelchook v. Société Générale de Banque au Liban SAL*, 67 F.4th 69, 71–72 (2d Cir.), *certified question accepted*, 39 N.Y.3d 1146 (2023) ("*Lelchook II*"). We therefore certified the question to that court. *Id.* at 71–72, 88–89. On review, the Court of Appeals clarified that, under New York's long-arm statute, "where an entity acquires all of another entity's liabilities and assets, but does not merge with that entity, it inherits the acquired entity's status for purposes of specific personal jurisdiction." *Lelchook v. Société Générale de Banque au Liban SAL*, 41 N.Y.3d 629, 638–39 (2024) ("*Lelchook III*").

With the benefit of that decision, we now hold that SGBL is subject to the specific personal jurisdiction of New York courts for purposes of adjudicating the claims presented by Plaintiffs. We further decide that the exercise of that jurisdiction here comports with federal due process principles. Key to our reasoning are the observations first, that SGBL deliberately acquired assets and liabilities of LCB that were generated in New York; second, that it was foreseeable at the time of the acquisition that SGBL would become subject to the exercise of jurisdiction in New York, such that SGBL should reasonably have anticipated that possibility; and finally, that the exercise of specific jurisdiction over SGBL in these circumstances comports with due process because it does not offend traditional notions of fair play and substantial justice. We therefore **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

# BACKGROUND

## I.     Factual background

We draw the facts from the allegations in Plaintiffs' complaint.[1]

In the summer of 2006, the terrorist organization Hizbollah carried out a series of rocket attacks against civilian population centers in Israel (the "2006 attacks"). As mentioned above, Plaintiffs are 21 U.S. citizens who were harmed in the 2006 attacks, and the estate and family members of a U.S. citizen, David Martin Lelchook, who was killed in one such attack.

Plaintiffs allege that LCB, a corporation organized under Lebanese law and headquartered in Beirut, provided extensive banking services to Hizbollah in the years leading up to the 2006 attacks. They charge that, during that period, LCB entered into a correspondent banking relationship with a bank located in New York, allowing LCB to facilitate transactions in U.S. dollars rather than in other currencies. LCB is further alleged to have repeatedly used the New York correspondent bank, with its help executing millions of dollars' worth of wire transfers that enabled Hizbollah to plan, prepare for, and carry out terrorist attacks around the world. By executing the transactions, LCB "caused, enabled and facilitated" the 2006 attacks, Plaintiffs assert, making it liable to them for damages under the Anti-Terrorism Act of 1990 ("ATA"), as amended in 2016 by the Justice Against Sponsors of Terrorism Act ("JASTA"), 18 U.S.C. § 2331 *et seq.* App'x at 20.

The banking relationship eventually generated litigation against LCB in this Circuit. *See infra* Section II. By 2008, over 90 Hizbollah victims and their families had

_____

[1] Except for the complaint's conclusory allegations, which do not bind us, for present purposes we accept as true all of its factual allegations and draw all reasonable inferences in favor of Plaintiffs. *See MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 82 (2d Cir. 2023).

sought damages from LCB in a suit in the Southern District of New York, and by 2010, the victims' lawsuit had reached this Court on review of various novel issues. LCB's legal difficulties deepened in February 2011, when the U.S. Department of the Treasury designated it a financial institution of "primary money laundering concern," citing its involvement with Hizbollah. App'x at 51.

Just a few months after the designation, Defendant SGBL, a Beirut-based private joint stock company organized under Lebanese law, entered into a sweeping "Sale and Purchase" agreement with LCB (the "Agreement"). In return for SGBL's $580 million payment to LCB, LCB agreed to "transfer, convey, and assign" to SGBL, and SGBL agreed to "receive and assume" from LCB, "all of [LCB's] Assets and Liabilities." App'x at 52, 61, 140. The Agreement defined these liabilities broadly:

> The Assumed Liabilities consist *inter alia* of any and all of [LCB's] liabilities and/or obligations and/or debts of any kind, character or description, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, determined, determinable or otherwise, to the extent they relate to the [LCB's] Business, all as at the Completion Date.

App'x at 53, 61.[2] The contemplated transaction closed on June 22, 2011.[3]

Plaintiffs claim that LCB was "an extremely profitable and wealthy entity" when the transaction closed but assert that, today, LCB is "unable to satisfy any judgment

---

[2] In their Appendix, Plaintiffs have provided only a portion of the Agreement's text. We cite to that where possible and to Plaintiffs' allegations of its terms where necessary.

[3] The Agreement did not require or appear to contemplate (so far as the record shows) the formal dissolution of LCB, and it appears that LCB continues to exist in some form. As of 2021, it was still defending litigation in this Court. *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021); *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-cv-7, 2020 WL 7089448, at *17 (E.D.N.Y. Nov. 25, 2020) ("LCB continues to exist as an entity and is litigating in the *Kaplan* case currently before the Second Circuit.").

against it." Appellants' Br. at 11–12. "SGBL's purchase of LCB's assets" caused the turnabout; otherwise, LCB "would easily have been able to satisfy a judgment" entered in this case, Plaintiffs say. *Id.* at 12. Consistent with Plaintiffs' account, LCB represented to the United States Supreme Court in a February 2017 opposition to a petition for certiorari that LCB "is defunct, insolvent, and unable to pay any judgment rendered against it." Brief in Opposition to Petition for Writ of Certiorari at 4, *Licci v. Lebanese Canadian Bank, SAL*, 584 U.S. 959 (2018) (No. 16-778), 2017 WL 712025, at *4; *see* App'x at 54.

## II.     The *Licci/Kaplan* litigation

This Court has previously heard appeals of several district court decisions addressing claims against LCB related to the 2006 attacks. These claims have been pursued by substantially overlapping groups of plaintiffs in a long-running line of cases that we have referred to as the "*Licci/Kaplan*" litigation. *See Lelchook II*, 67 F.4th at 73 (listing cases). The *Licci/Kaplan* cases, too, involve ATA-rooted claims for damages stemming from the 2006 attacks. Three of our *Licci/Kaplan* decisions, which we discuss briefly below, are relevant here, as is a related 2012 New York Court of Appeals decision.[4]

---

[4] We list them here for easy reference.

- *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) ("*Licci II*")

- *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012) ("*Licci III*")

- *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ("*Licci IV*")

- *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) ("*Kaplan II*")

In *Licci II*, we considered whether LCB was subject to specific personal jurisdiction in New York for ATA claims related to the 2006 attacks. *See Licci II*, 673 F.3d at 62–63, 74–75. We certified to the New York Court of Appeals questions about the scope of the state long-arm statute, CPLR 302(a)(1), on which Plaintiffs' jurisdictional theory as to LCB relied. *See id.* at 75–76. That court instructed that the "maintenance" and "repeated use of a correspondent account in New York on behalf of a client" constituted a "transaction of business in New York," and this demonstrated an "articulable nexus or substantial relationship between the transaction" and the claims alleged. *Licci III*, 20 N.Y.3d at 338–40. The claims thus "arose from" the transaction of business in New York and permitted courts in New York to exercise specific personal jurisdiction over LCB under CPLR 302(a)(1). *See id.* at 339–41.

With the antecedent state law questions resolved, we concluded in *Licci IV* that the federal district court's exercise of specific personal jurisdiction over LCB in New York on these claims—based on LCB's maintenance and repeated use of its correspondent bank account at a New York financial institution—comported with due process. 732 F.3d at 165.

Thus, by 2013, *Licci II*, *Licci III*, and *Licci IV* had established that LCB was subject to the exercise of specific personal jurisdiction in New York for ATA claims arising from the 2006 attacks. And in 2021, in *Kaplan II*, we held that the plaintiffs in the *Licci/Kaplan* litigation stated a plausible aiding-and-abetting liability claim against LCB under the ATA, as amended by JASTA, 18 U.S.C. § 2333(d)(2). *Kaplan II*, 999 F.3d at 863–67. As we observed in *Lelchook II*, the plaintiffs' aiding-and-abetting allegations in *Kaplan II* "virtually mirror those made" by Plaintiffs here and are offered in support of "materially identical" claims. 67 F.4th at 74.

8

### III.     Procedural history

In January 2019, Plaintiffs sued SGBL in the U.S. District Court for the Southern District of New York, seeking to hold SGBL as LCB's successor both primarily and secondarily liable for the damages they suffered from the 2006 attacks.[5] They claim that SGBL's unlimited acquisition of LCB's liabilities in the 2011 transaction compels the conclusion that "SGBL assumed and bears successor liability for LCB's liability to . . . [P]laintiffs" here. App'x at 58 (First Amended Complaint).

Plaintiffs' theory of personal jurisdiction, like their theory of liability, depends entirely on SGBL's status as "successor" to LCB and on the *Licci/Kaplan* line of cases. The district court has personal jurisdiction over SGBL, they reason, because our Court "determined that LCB's conduct . . . rendered it subject to personal jurisdiction in the State of New York, and SGBL assumed and bears successor liability for LCB's conduct," *i.e.,* LCB's repeated use of its New York correspondent account to execute transactions on behalf of Hizbollah. App'x at 23.

The district court was not convinced. In early 2020, on SGBL's motion, the court dismissed the case for want of jurisdiction. The court understood New York law to recognize an inherited-jurisdiction theory only upon a statutory or de facto merger of the two entities in question: a transaction that was not a merger would not "suffic[e] to impute a target's jurisdictional status on an acquiror." *Lelchook I*, 2021 WL 4931845, at *2–3.

On appeal (as described above), this panel first determined that we could not confidently predict how the New York Court of Appeals would resolve the threshold

---

[5] Plaintiffs also named several other entities as defendants, but in the First Amended Complaint—operative here— they proceed against only SGBL.

"successor jurisdiction" question. We therefore certified the following two questions to that court:

1. Under New York law, does an entity that acquires all of another entity's liabilities and assets, but does not merge with that entity, inherit the acquired entity's status for purposes of specific personal jurisdiction?

2. In what circumstances will the acquiring entity be subject to specific personal jurisdiction in New York?

*Lelchook II*, 67 F.4th at 71–72. The Court of Appeals answered the first question in the affirmative and found it unnecessary to answer the second. *See Lelchook III*, 41 N.Y.3d at 631.

In addressing the first question, the Court of Appeals identified several relevant factors: the "impact of [the] rule on parties to a potential acquisition"; the "reasonable assumptions and expectations of the parties"; whether imputation of a predecessor's jurisdictional status "induces responsible parties to internalize responsibility for risks"; and the "impact . . . on those injured by a predecessor's acts." *Id.* at 636–37. It concluded that "[t]hose factors tip in favor of allowing successor jurisdiction where a successor," *i.e.*, SGBL, "purchases all assets and liabilities" from the predecessor entity, *i.e.*, LCB. *Id.* at 637–39.

It explained its decision further by observing that "[s]ophisticated corporate entities such as SGBL will undoubtedly engage in robust due diligence before agreeing to acquire all assets and liabilities of another entity," including as to where jurisdiction over actions related to the company's liabilities may lie. *Id.* at 637. The parties can factor into the purchase price the costs associated with such liabilities, avoiding unfairness, it observed. *Id.* And, as a more general policy matter, the rule it stated was consistent with good corporate stewardship because it would avoid a situation in which a successor

acquired all of a predecessor's assets while shielding itself from judgment on certain of the predecessor's related liabilities (which it otherwise purported to assume). *Id.* at 638. That result, in turn, would help to ensure the existence of a responsible entity, available "to absorb the risk of liability and compensate injured parties." *Id.*

We requested supplemental briefing from the parties on the decision's import for this case and on the question whether exercising specific personal jurisdiction over SGBL on Plaintiffs' claims here would comport with due process. We now resolve those questions.

## DISCUSSION

We review *de novo* a district court's decision to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). On such review, we construe the pleadings in the light most favorable to the plaintiffs. *Id.* To survive a motion to dismiss for lack of personal jurisdiction, "a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006).

## I.  Principles of specific personal jurisdiction

A district court may exercise specific personal jurisdiction over a defendant only if three requirements are satisfied: "(1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 69 (2d Cir. 2022) (internal quotation marks omitted); *see also Licci II*, 673 F.3d at 59–60. SGBL does not contest that it was properly served, and so we proceed to examine the second and third requirements.

As to the *statutory basis* for personal jurisdiction over SGBL, a non-U.S. entity, we have previously ruled that Plaintiffs' only viable theory rested on Federal Rule of Civil Procedure 4(k)(1)(A). *See Lelchook II*, 67 F.4th at 75 & n.7. That rule, entitled "Territorial Limits of Effective Service," provides that proper service establishes the district court's "personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A) (internal punctuation omitted). We therefore ask next whether the law of the forum state—here, New York, and in particular the New York long-arm statute— permits the exercise of personal jurisdiction over SGBL in New York. *See Lelchook II*, 67 F.4th at 75; *Licci IV*, 732 F.3d at 168.[6] We conclude that it does: under *Lelchook III*, a company that acquires all of another entity's assets and liabilities inherits that entity's jurisdictional status in cases arising from the acquired liabilities.

We then turn to the question whether the court's exercise of specific personal jurisdiction over SGBL in this case comports with due process. *See Lelchook II*, 67 F.4th at 75–76. Again, as we explain below, we conclude that it does.

## II.      Jurisdiction over SGBL under New York's long-arm statute

In *Lelchook III*, the New York Court of Appeals set out a straightforward general rule: "[W]here an entity acquires all of another entity's liabilities and assets, but does not merge with that entity, it inherits the acquired entity's status for purposes of specific personal jurisdiction." 41 N.Y.3d at 638–39. The court reasoned that where the predecessor entity would be subject to specific personal jurisdiction in New York on the

---

[6] We have previously determined that New York's long-arm statute is not co-extensive with the Due Process Clause, and so we address whether it provides for personal jurisdiction over SGBL before ruling on the constitutional question. *See Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022).

claims at issue, subjecting the successor to jurisdiction under the long-arm statute based on the predecessor's contacts was permitted by the statute and would be both fair and reasonable. *Id.* at 636–39.[7]

Applying that rule to the facts at hand easily resolves the state law jurisdictional question before us. As described, SGBL acquired all of LCB's assets and liabilities, without reservation. It therefore "inherit[ed] [LCB's] status for purposes of specific personal jurisdiction." *Id.* LCB's jurisdictional contacts at the time of the purchase are under New York law properly treated as SGBL's own.

As we have described, the claims and contacts alleged in this case as to LCB are "materially identical" to those at issue in the *Licci/Kaplan* litigation, wherein we held LCB is subject to personal jurisdiction in New York. *Lelchook II*, 67 F.4th at 74. Plaintiffs in both cases allege LCB used its New York correspondent account to finance Hizbollah. *Compare Licci IV*, 732 F.3d at 165–66, *with* App'x at 30–32 ¶¶ 44–56, 40 ¶¶ 87–90. And those allegations satisfy the state long-arm statute: they describe a "transaction of business" in New York, which Plaintiffs' claims "aris[e] from." *Licci IV*, 732 F.3d at 168–69; *see* CPLR 302(a)(1); *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129–31 (2d Cir. 2022) (describing the uses of a correspondent bank account that support jurisdiction under New York's long-arm statute). Because LCB would be subject to personal jurisdiction on those claims in a New York court, Plaintiffs have made a prima facie showing that SGBL too is amenable to personal jurisdiction in New York on those claims pursuant to the state long-arm statute. *Licci IV*, 732 F.3d at 169.

---

[7] The Court of Appeals further observed that New York is not an outlier in adopting this approach: rather, its decision "accords with nearly all decisions of other state appellate courts and federal circuit courts that have considered the issue of successor jurisdiction." *Lelchook III*, 41 N.Y.3d at 639 n.3.

SGBL argues, however, in what it acknowledges to be a "counterintuitive" formulation, that the rule laid out by the New York Court of Appeals actually leads to the contrary conclusion: that a New York court would *not* exercise long-arm jurisdiction over SGBL. SGBL Letter Br. at 1 (Dkt. No. 89); *see also id.* at 3–5. A New York court would lack jurisdiction, it urges, because the "underlying justifications" for the rule that the New York Court of Appeals articulated are lacking here. *Id.* at 3.

SGBL contends, for example, that Plaintiffs could pursue assets of LCB in New York—the roughly $580 million consideration that SGBL paid to LCB for its assets and liabilities—thus negating any need for courts to apply the idea of inherited jurisdiction over these claims. But the state high court rejected this very argument when it explained that there was "no good reason" to mandate that plaintiffs proceeding against a successor "take an indirect and uncertain path to recompense" against the (perhaps insolvent) predecessor. *Lelchook III*, 41 N.Y.3d at 638.

SGBL similarly attempts to disavow having received any benefit from LCB's New York business, attempting to undercut that part of the Court of Appeals' rationale, too.[8] *See* SGBL Letter Br. at 5. But the Agreement shows that, together with LCB's liabilities, SGBL acquired *all* of LCB's then-listed assets. It does not exclude those assets that were derived from the use of the New York correspondent account—or of any other asset group, for that matter. Accordingly, we reject this argument. *See Lelchook III*, 41 N.Y.3d at 638.

---

[8] It asserts relatedly that LCB is not in fact "defunct," pointing simply to LCB's continuing litigation in this Circuit. SGBL Letter Br. at 4. But this is in effect an invitation to discount Plaintiffs' plausible allegations on the subject. On review of a motion to dismiss, we are not at liberty to do so.

In sum, these and SGBL's other contentions on successor jurisdiction under New York law are squarely defeated by the state court's ruling.

### III. Fourteenth Amendment due process limits on jurisdiction over SGBL

With the state law jurisdictional question resolved, we turn to the bottom line: whether a U.S. district court's exercise of specific personal jurisdiction over SGBL in New York, based on the contacts SGBL inherited from LCB, comports with Fourteenth Amendment due process principles.[9]

Where New York's long-arm statute permits the exercise of jurisdiction over the parties, we have not generally "suggested that due process requires something more than New York law." *Spetner v. Palestine Inv. Bank*, 70 F.4th 632, 645 (2d Cir. 2023) (footnote omitted).[10] Still, we "independently ensure that the constitutional requirements are satisfied." *Id.*

A court's exercise of personal jurisdiction over a person or entity is bound by the Constitution's guarantee of due process. The law of due process governing the exercise of jurisdiction over corporate entities has undergone significant developments in recent decades. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117 (2014); *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255 (2017). But the seminal principle has not changed:

---

[9] The Supreme Court recently held that the Due Process Clause of the Fifth Amendment and Due Process Clause of the Fourteenth Amendment are not of equal reach, and expressly "declin[ed] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment." *Fuld v. Palestine Liberation Org.*, 606 U.S. __, 145 S. Ct. 2090, 2105 (2025). The familiar Fourteenth Amendment analysis continues to apply, however, where state law binds a federal court in determining the bounds of its jurisdiction over persons as it does under Rule 4(k)(1)(A), applicable here. *See id.* at 2102.

[10] *See also Licci IV*, 732 F.3d at 170 (noting that CPLR 302(a)(1) is "not coextensive" with due process while remarking that a case would be "rare" in which contacts satisfy the statute yet fail to comport with due process).

where the Fourteenth Amendment's protections apply, "a tribunal's authority depends on the defendant's having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable . . . ' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945)).

To exercise specific personal jurisdiction over a corporate defendant that is not incorporated in or primarily doing business in the State, a court must first determine that a corporate defendant's in-state acts reflect its "purposeful availment" of opportunities within the State, and that the asserted claims arise out of or relate to its contacts with the State.[11] *Id.* at 359; *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023) (plurality); *Fuld v. Palestine Liberation Org.*, 606 U.S. __, 145 S. Ct. 2090, 2102–03 (2025). The corporate defendant's in-state acts must further make it reasonably foreseeable that it would be subject to suit in courts sitting in that State. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980); *Licci IV*, 732 F.3d at 170; *Spetner*, 70 F.4th at 645. In other words, it must receive "fair warning" that it might be called to answer claims in the forum. *Ford Motor Co.*, 592 U.S. at 360; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The exercise of jurisdiction in the State as to the related claims over the defendant must be "reasonable"—that is, consistent with "traditional notions of fair play and substantial justice" that the Court referred to in *International Shoe*. *See Licci IV*, 732 F.3d at 169–70, 174.

---

[11] In contrast, general jurisdiction over a corporate defendant may be exercised in a State where the corporation has continuous and systematic contacts so extensive as to render it "essentially at home"—*i.e.*, in its state of incorporation or its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see, e.g., Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016). Those deep contacts subject it to jurisdiction by a court in that forum for any claims at all. *See Goodyear Dunlop Tires Operations*, 564 U.S. at 919.

On review of these factors here, we conclude that Plaintiffs have stated a prima facie case for the exercise of specific personal jurisdiction over SBGL in New York: their allegations satisfy the governing standards at each step of the specific jurisdiction analysis. SGBL's motion to dismiss under Rule 12(b)(2) for want of personal jurisdiction thus fails. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (per curiam). We set forth our reasoning below.

A.    Minimum contacts: "purposeful availment" of the forum

As described above, Plaintiffs proceed solely on a successor theory of jurisdiction. State and federal courts alike have consistently permitted the jurisdictional contacts of a predecessor to be imputed to its successor, reasoning that if forum law could also hold the successor liable for its predecessor's actions, its related jurisdictional actions should also attach to the successor. *See, e.g., Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991) ("A corporation's contacts . . . may be imputed to its successor if forum law would hold the successor liable for the actions of its predecessor."); *State ex rel. Stein v. E.I. du Pont de Nemours & Co.*, 382 N.C. 549, 557–60 (2022) (holding a predecessor corporation's contacts may be imputed to a successor for jurisdictional purposes when forum law would hold the successor liable for its predecessor's actions (referencing *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454 (4th Cir. 1990))); *Ostrem v. Prideco Secure Loan Fund, LP*, 841 N.W.2d 882, 896 (Iowa 2014) ("[C]ourts commonly impute a corporate predecessor's contacts to its successor in order to exercise personal jurisdiction over the successor.") (collecting cases).

We agree with these courts' analysis and apply it here. As part of the Agreement, SGBL agreed to assume, without qualification, "any and all of [LCB's] liabilities and/or obligations." App'x at 53, 61. Although the Court of Appeals recognized that "liability and jurisdiction are distinct legal concepts," *Lelchook III*, 41 N.Y.3d at 635, it also said

17

that the jurisdictional analysis under New York law is "inform[ed]," if not determined, by the substantive question of successor liability, *id.* at 635. In light of this substantial overlap, we read *Lelchook III* as concluding that, taking Plaintiffs' allegations as true, SGBL could be liable under New York law for LCB's acts as a result of the Agreement. *See id.* at 637–38 (reasoning that SGBL should have "anticipated being subject to jurisdiction over LCB's liabilities in New York" because "the great weight of authority at the time [of the Agreement] permitted imputation whenever the forum state's law would hold the successor liable" (internal quotation marks omitted, alterations adopted)).  Accordingly, because Plaintiffs have alleged sufficient facts to establish successor liability under New York law, we impute LCB's forum contacts to SGBL for purposes of our personal jurisdiction analysis.[12]

> 1.  *SGBL reached out to acquire the fruits of LCB's business transactions in New York, purposefully availing itself of the forum*

LCB, if still viable, would be subject to specific personal jurisdiction in New York in an action on Plaintiffs' claims. In its supplemental briefing, SGBL does not appear to dispute this proposition. Rather, it seeks to distance itself from LCB, taking the view that it "(as opposed to third-party LCB) has no contacts with the forum," and urging that New York courts cannot exercise specific jurisdiction over it notwithstanding the assets and liabilities it acquired. SGBL Letter Br. at 6–7. It denies any "purposeful availment" of the state of New York of its own. But this argument both mischaracterizes the nature of SGBL's acquisition of LCB's liabilities and ignores that SGBL benefited from LCB's activities in New York when it acquired LCB's assets.

---

[12] Because this appeal is from the district court's order on SGBL's motion to dismiss for lack of personal jurisdiction under New York law, we do not address the adequacy of Plaintiffs' federal claims under the ATA or JASTA. Nor do we express any view regarding the merits of SGBL's Rule 12(b)(6) motion.

LCB's use of the correspondent bank in New York was an activity "*purposefully directed toward the forum State.*" *Asahi Metal Indus. Co. v. Superior Ct. of California*, 480 U.S. 102, 112 (1987) (emphasis in original). LCB's deliberate and recurring use of that correspondent bank is reasonably seen as a form of "exploit[ation of] a State's market," the paradigmatic example of "purposeful availment." *Ford Motor Co.*, 592 U.S. at 359, 364 (internal quotation marks omitted, alterations adopted); *see Licci IV*, 732 F.3d at 170–172. LCB's repeated reliance on New York banking services "indicates desirability" of the state's banking system "and a lack of coincidence" in LCB's usage of that system. *Licci III*, 20 N.Y.3d at 340 (explaining analogous portion of the state long-arm statute inquiry). LCB's selection of that correspondent bank as opposed to another intermediary (as the New York Court of Appeals observed) was likely "cheaper and easier for LCB." *Id.* It conferred "financial and other benefits" that allowed LCB to retain those customers who sought the alleged monetary transfers. *Id.* As we observed earlier, LCB benefitted from the U.S. dollar's "stable and fungible" nature; from New York's "dependable and transparent" banking system; and from the "predictable jurisdictional and commercial" law of the state. *Licci IV*, 732 F.3d at 171. This made LCB susceptible to the New York court's jurisdiction on claims like those raised here, arising out of its use of that correspondent account. *See id.* at 170–73.

Under the Agreement, SGBL obtained the fruits of *all* of LCB's business, including its transactions in New York. Few courts have considered whether, in similar circumstances, a corporate successor is subject to jurisdiction that would properly have been exercised over its predecessor. Those that have addressed the issue have held that it is: where a predecessor "purposefully avail[ed] itself of the privilege of exploiting forum-based business opportunities," the successor's "express assumption of liability" constitutes a "deliberate undertaking" that "amounts to a purposeful availment of [the in-state] opportunities" exploited by the predecessor. *Jeffrey v. Rapid Am. Corp.*, 448

Mich. 178, 187, 198–99 (1995); *see Perry Drug Stores v. CSK Auto Corp.*, 93 F. App'x 677, 681 (6th Cir. 2003) (summary order) (referencing *Jeffrey*, 448 Mich. at 198–99); *Simmers v. Am. Cyanamid Corp.*, 394 Pa. Super. 464, 489–90 (1990) (holding successor jurisdiction proper in part on ground that it would be "absurd" to deny jurisdiction where "the assets purchased by the successor, at least in part, were derived from the forum"). Entering into the Agreement represented SGBL's choice to obtain LCB's assets and to answer for LCB's activities; that choice properly forms the basis for a court to impute LCB's contacts to SGBL. *Cf. Burger King*, 471 U.S. at 479–80 (upholding exercise of specific jurisdiction over defendants who purposefully "reach[ed] out beyond" their State by entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum and that contractual relationship gave rise to the suit (alteration in original)).

That SGBL acquired those contacts through its transaction with LCB, rather than directly, does not make the exercise of jurisdiction in New York improper. In a somewhat different context, we have recognized that the actions of a third party can properly support the exercise of specific jurisdiction over a defendant where the defendant's exploitation of forum opportunities through that third party is intentional. *See, e.g., Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (México) S.A. Institución de Banca Multiple*, 92 F.4th 450, 457–58 (2d Cir. 2024) (permitting imputation of brokers' contacts to defendant and noting that "a defendant can also avail itself of a forum" absent a formal agency relationship); *Spetner*, 70 F.4th at 645. The same principle applies here and makes specific personal jurisdiction over SGBL consistent with due process.

Resisting the exercise of jurisdiction, SGBL points to the Supreme Court's general statement that it has "consistently rejected . . . attempts to satisfy the . . . 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and

the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). *See* SGBL Letter Br. at 6. SGBL urges that LCB's activities are such "third party" contacts that are impermissibly ascribed to it, relying on a trio of Supreme Court cases. *Id.* at 6–7 (citing *Walden*, 571 U.S. at 284; *World-Wide Volkswagen*, 444 U.S. at 291–92; and *Hanson v. Denckla*, 357 U.S. 235, 253–54 (1958)). But it misunderstands these cases. Each holds that a plaintiff or a third party's "*unilateral* activity" may not form the sole basis for a forum state's exercise of specific personal jurisdiction over a defendant, as we explain in the margin. *Walden*, 571 U.S. at 286 (emphasis added).[13] In all three, and different from the circumstances before us, no

---

[13] First, in *Hanson*, the Supreme Court concluded that a Florida court could not exercise specific personal jurisdiction over a corporate trustee based in Delaware when the jurisdictional claim rested "solely on the contacts of the trust's settlor," a Florida domiciliary who executed powers of appointment in Florida. *Walden*, 571 U.S. at 284 (describing *Hanson*, 357 U.S. at 253–54). Earlier, when the corporate trustee and the settlor executed the trust, the settlor resided in Pennsylvania. *Hanson*, 357 U.S. at 252. The defendant trust company "transact[ed] no business" in Florida and, so far as the record showed, it had never even solicited business there. *Id.* at 251. "The first relationship Florida had to the agreement" was initiated unilaterally by the settlor "years later" when she moved to the state. *Id.* at 251–52.

Similarly, in *World-Wide Volkswagen*, due process barred Oklahoma courts from exercising personal jurisdiction over an automobile distributor operating in New York, New Jersey, and Connecticut, when jurisdiction was asserted based only on an automobile purchaser's travel on Oklahoma highways, where they "happened to suffer an accident while passing through." 444 U.S. at 295.

Most recently, in *Walden*, the Supreme Court held that a federal district court in Nevada could not exercise specific personal jurisdiction over a defendant police officer residing in Georgia. The police officer was alleged to have seized cash from the plaintiffs while they stopped at the Atlanta airport on their way to their part-time residence in Nevada. *Walden*, 571 U.S. at 279–81, 288–89. He then helped draft a false affidavit in support of the forfeiture claim to the cash. *Id.* But the *officer's* acts "formed no jurisdictionally relevant contacts with Nevada." *Id.* at 289. It was instead only plaintiffs' Nevada residence and their Nevada destination while in the Atlanta airport that formed the defendant's only connection to the state. *Id.* at 280, 288–89.

act on the defendant's part determined that it would be subject to putative liability in the forum chosen by the plaintiff.

SGBL's summons to a New York-based court to answer Plaintiffs' claims is attributable neither to serendipity nor to Plaintiffs' will. Unlike the defendants in *Hanson*, *World-Wide Volkswagen*, and *Walden*, SGBL was able to assess its transaction with LCB *before* assuming LCB's liabilities, and it was able to assess "where jurisdiction over such liabilities may lie." *Lelchook III*, 41 N.Y.3d at 637; *see also Simmers*, 394 Pa. Super. at 490 ("[I]n today's sophisticated world of corporate takeovers, a corporation[] [that] assumes another's liabilities . . . considers the possible extent of any liabilities and where those liabilities may exist."). The potential reach of LCB's liabilities, and its jurisdictional contacts, were known to SGBL at that time. SGBL cannot now reasonably urge that due process bars subjecting it to specific personal jurisdiction based on LCB's conduct, which generated the very assets and liabilities that it purchased. *See* SGBL Letter Br. at 7.

> 2. *In 2011, when SGBL entered into the Agreement, the legal landscape made it foreseeable that its acquisition would render it subject to the exercise of specific personal jurisdiction in New York*

As we have said, due process requires "that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. SGBL contends that this requirement is not met here.[14] It cites the legal questions raised in the *Licci/Kaplan*

---

[14] SGBL's related point that foreseeability alone does not suffice for the exercise of jurisdiction is, of course, beyond dispute. *See* SGBL Letter Br. at 8–9. But that general point offers no support for SGBL's position. Plaintiffs' jurisdictional theory is not exclusively grounded in foreseeability: it also relies on SGBL's acquisition of LCB's liabilities. *See id*. at 9. And foreseeability is not *irrelevant* to personal jurisdiction. Rather, it is a necessary element of the due process analysis for a corporate defendant. *See World-Wide Volkswagen*, 444 U.S. at 297 ("[It

litigation, as well as in this case, that had yet to be answered definitively in 2011 when it made its purchase and argues that the pendency of those questions made the exercise of jurisdiction over it unforeseeable. SGBL Letter Br. at 11–12. We disagree.

Certainty of result is not necessary to establish the reasonable foreseeability that due process requires to support specific personal jurisdiction. The defendant needs only "fair warning" that it may be subject to the state's authority. *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 85 (2d Cir. 1995); *see also World-Wide Volkswagen*, 444 U.S. at 297; *Ford Motor Co.*, 592 U.S. at 360. SGBL had that fair warning. As the Fourth Circuit wrote as early as 1990, holding a successor subject to personal jurisdiction based on the actions of its predecessor, the "great weight" of authority existing even then permitted "imputation of a predecessor's actions" to its successor "*whenever* forum law would hold the successor liable for its predecessor's actions." *Madison Mgmt. Grp.* 918 F.2d at 454 (internal quotation marks omitted, emphasis in original) (citing cases). SGBL does not point to a single federal appellate or state high court decision issued before 2011 or since that rejects this successor-jurisdiction analysis.[15]

---

is] critical to due process" that the defendant "should reasonably anticipate being haled into court" in the forum.); *Licci IV*, 732 F.3d at 171–72.

[15] Some courts have framed successor jurisdiction in part as a matter of consent. *See Stein*, 382 N.C. at 559 ("[W]hen a successor corporation assumes the liabilities of its corporate predecessors, the successor in effect consents to be held liable in the same locations where its predecessor would have been exposed." (quoting *Simmers*, 394 Pa. Super. at 490)); *Jeffrey*, 448 Mich. at 194 (same); *cf. Mallory*, 600 U.S. at 138 (plurality) ("[A]ll *International Shoe* did was stake out an additional road to jurisdiction over out-of-state corporations. . . . Our precedents have recognized, too, that 'express or implied consent' can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed." (citations omitted)). That rubric could offer a persuasive way of understanding an express assumption of assets and unlimited liabilities, we agree. But Plaintiffs here did not advance a consent theory of specific personal jurisdiction, and so we will not examine it further.

As to the claims asserted and their relationship to LCB's contacts in New York, first, the possibility of ATA liability for LCB was apparent at the time of the Agreement. By the time SGBL acquired LCB's assets and liabilities in June 2011, the Treasury Department had designated LCB a "primary money laundering concern." App'x at 51 ¶ 117. The *Licci* litigation had begun, based on allegations of LCB's repeated, deliberate use of its New York bank correspondent account to support Hizbollah; indeed, it was already the subject of an appeal to this Court. *See Licci IV*, 732 F.3d at 166–68. When a successor company adopts liabilities that are "no secret" and for which the predecessor has already been subject to public legal battles, the successor has ample notice that it might become liable "in any venue" where liability accrued. *Stein*, 382 N.C. at 563. When it acquired LCB's assets and liabilities, SGBL thus had fair warning that LCB's contacts in New York might subject it to suit there for ATA claims related to LCB's alleged support for and facilitation of Hizbollah's terrorist acts.[16]

SGBL further denies that it was reasonably foreseeable that it would be subject to suit in New York based on a theory of secondary liability under JASTA. It observes that Plaintiffs' secondary liability claims were not viable until 2016, when JASTA was enacted to include aiding-and-abetting liability for terrorist acts under the ATA. *See* JASTA, Pub. L. No. 114-222, § 4(d), 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. §

---

[16] For the same reason, we reject SGBL's other attempts to narrow the applicability of New York's successor liability rule—for instance, its argument that specific jurisdiction might be properly limited to circumstances in which the "underlying lawsuit for which a plaintiff seeks to hold an entity liable on a successor theory . . . is pending in New York at the time of the asset-and-liability purchase." SGBL Letter Br. at 7.

2333(d)).[17] It therefore could not reasonably have known when it entered the Agreement in 2011, it asserts, that LCB would be vulnerable to aiding-and-abetting claims.

It is true that "[a] plaintiff must establish the court's jurisdiction with respect to each claim asserted," and we therefore must consider both whether the court had jurisdiction to hear the Plaintiffs' primary liability claims against SGBL (under the ATA) and their secondary liability claims (under JASTA). *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (internal quotation marks omitted). But the court's exercise of specific personal jurisdiction over SGBL on the secondary liability claims, too, satisfies due process. It is enough that (1) the claims "arise out of or relate to [LCB's imputed] contacts with the forum," *Ford Motor Co.*, 592 U.S. at 359 (internal quotation marks omitted), as Plaintiffs' aiding-and-abetting claims do; (2) SGBL could reasonably anticipate being subjected to ATA-related liability in New York based on LCB's alleged in-forum conduct and affiliation with Hizbollah; and (3) SGBL, in the Agreement, assumed the assets and liabilities of LCB—and thus its contacts. *See* App'x at 53 ¶ 126, 61 (specifying liabilities "of any kind," "determined, determinable or otherwise"). In these circumstances, due process does not require that SGBL be allowed to invoke a putative jurisdictional barrier and avoid one set of LCB's potential liabilities.[18]

---

[17] In JASTA, Congress made these ATA amendments retroactively available to a plaintiff in any action pending when, or filed after, it enacted JASTA. *See* JASTA, Pub. L. No. 114-222, § 7, 130 Stat. 852, 855 (2016).

[18] SGBL urges that Plaintiffs' claims lack the "connection between the forum and the specific claims at issue" necessary for specific personal jurisdiction, as identified in *Bristol-Myers Squibb v. Superior Ct. of California*, 582 U.S. 255, 265 (2017). It suggests that the suit therefore does not arise from or relate to LCB's New York contacts. SGBL Letter Br. 14–15. It emphasizes that Plaintiffs are not New York residents; that they did not suffer harm in New York; and its view that the conduct complained of did not "occur" in New York. *Id.* But this argument is squarely foreclosed by *Licci IV*. There, we held that the requisite "affiliation between the forum and the underlying controversy" existed where a bank "deliberate[ly] and recurring[ly]" uses a New York correspondent relationship to execute the transactions that gave rise to the claims. *Licci IV*,

B.  Reasonableness factors: traditional notions of fair play and substantial justice

In addition to satisfying the "minimum contacts" and "relatedness" requirements, the exercise of jurisdiction over a defendant must "comport with fair play and substantial justice." *Licci IV*, 732 F.3d at 170 (quoting *Burger King*, 471 U.S. at 476). To determine whether this requirement is satisfied, we consider the following factors: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest . . . in furthering substantive social policies." *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 279 (2d Cir. 2024), *cert. denied sub nom. Zembrka v. Am. Girl, LLC.*, 145 S. Ct. 1130 (2025). It is only in an "exceptional situation" will we find the exercise of specific personal jurisdiction "unreasonable" once minimum contacts and the claims' relationship to the forum are sufficiently established. *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 274 (2d Cir. 2023), *cert. denied sub nom. BASF Metals Ltd. v. KPFF Inv., Inc.*, 144 S. Ct. 681 (2024).

On review, we conclude that these reasonableness factors readily permit the court's exercise of specific personal jurisdiction over SGBL here.

1.  *The burden on the defendant*

We have no doubt that, as SGBL complains, the burden on it to litigate in New York may be significant. SGBL is based in Lebanon; the 2006 attacks occurred in Israel;

---

732 F.3d at 170–73; *see also Spetner*, 70 F.4th at 645–46 (use of correspondent was "sufficiently related" to injuries because the account "was an instrument to achieve the very wrong alleged" where funds transferred supported terrorist activity (internal quotation marks omitted)). The place of Plaintiffs' residence does not change this conclusion. *See Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 779–81 (1984).

and Plaintiffs, all but one of whom are American citizens, live outside of New York, and indeed, outside of the United States. As a result, "many of the documents and witnesses relevant to this litigation are located abroad." *Licci IV*, 732 F.3d at 174. This factor plainly cuts in SGBL's favor.

Still, we conclude that this burden is a manageable one. As we have said before, "the conveniences of modern communication and transportation ease any burden the defense of this case in New York might impose on [SGBL]." *Id.* (internal quotation marks omitted). The company's required appearance in New York would not place on it an insurmountable or even undue burden.

### 2. *The interests of the forum state*

While the attacks that caused harm occurred in Israel, not in New York, Plaintiffs' claims against SGBL stem from its predecessor's "use of a correspondent account [in New York] to support a terrorist organization." *Id.* As a result, and as has we have earlier recognized, the suit implicates "the United States' and New York's interest in monitoring banks and banking activity to ensure that its system is not used as an instrument in support of terrorism, money laundering, or other nefarious ends." *Id.*; *see also Spetner*, 70 F.4th at 646 (recognizing that the forum's interest in monitoring bank activity may be "heightened" when a nesting set of correspondent accounts is used to shield a bank's identity); *Am. Girl*, 118 F.4th at 280 (recognizing New York's "exceptionally strong interest" in protecting businesses in the state from unlawful foreign activity). This factor cuts in favor of exercising jurisdiction in New York over SGBL on these claims.

### 3. *Plaintiffs' interest in convenient and effective relief*

It is evident that Plaintiffs would likely struggle to "obtain[] convenient and effective relief" in the absence of the New York federal court's exercise of jurisdiction in

this case. *Licci IV*, 732 F.3d at 170. The record before us suggests that LCB has not been dissolved—at least for the purpose of actively litigating the many suits brought against it. But, as mentioned above, the company stated in 2017 that it was "defunct, insolvent, and unable to pay any judgment rendered against it." Brief in Opposition to Petition for Writ of Certiorari at 4, *Licci v. Lebanese Canadian Bank, SAL*, 584 U.S. 959 (2018) (No. 16-778), 2017 WL 712025, at *4. The record provides little basis to conclude otherwise.[19] If so, Plaintiffs have at best remote—and likely illusory—prospects of success in receiving redress from LCB.

Relatedly, and as observed above in connection with the general rule of successor liability, a holding in SGBL's favor on its jurisdictional defense would both enable and incentivize companies to pass their assets on to successors in other jurisdictions and "shield[] [them] from direct claims for . . . liabilities in that forum." *Lelchook III*, 41 N.Y.3d at 638. Plaintiffs would need "to directly sue the successor in a forum that may . . . be less favorable," reducing the value of their claims and requiring they "absorb those costs themselves." *Id.* That would be a particularly concerning outcome in this case, where SGBL has not even tried to demonstrate that Plaintiffs would be able to seek, never mind obtain, the relief they request in Lebanon, SGBL's place of incorporation and principal place of business. Denying jurisdiction would harm Plaintiffs' reasonable interests in pursuing effective relief. *See Fuld*, 145 S. Ct. at 2107 (acknowledging, in *dicta*, the "strong interest" of U.S. citizen plaintiffs in "seeking justice through an ATA damages action in U.S. courts").

---

[19] As alleged in the operative complaint, LCB obtained $580 million in exchange for its assets and liabilities. The record does not show what has happened to these funds. In the procedural posture of this case, we must credit Plaintiffs' allegation that, despite the large payment, LCB is now defunct and unable to satisfy a judgment against it on these claims.

4. *International comity; efficient administration of justice; fairness*

SGBL urges next that "considerations of international rapport and comity" counsel against the exercised of specific personal jurisdiction here, as do concerns about the efficient administration of justice. SGBL Letter Br. at 13 (internal quotation marks omitted, alterations adopted). These arguments fail to persuade us. Our decisions suggest that these concerns, explored by the Supreme Court in *Daimler v. Bauman*, 571 U.S. 117 (2014), are most salient when a court attempts to subject a foreign entity to the *general* jurisdiction of a state. *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th at 274. Undoubtedly, international rapport may suffer when a court in one sovereign jurisdiction takes an unjustifiably expansive view of its *general* jurisdiction over foreign entities. But "[t]he international rapport concerns of *Daimler* do not apply equally in a case . . . that involves specific jurisdiction." *Id.* For that reason, the alarming specters that SGBL invokes—premised on the concept that permitting specific personal jurisdiction here will, for example, discourage foreign investment in the United States and harm foreign and interstate commerce—have no traction. *See* SGBL Letter Br. at 13–14. A court's exercise of specific personal jurisdiction on claims that are among voluntarily acquired liabilities is hardly "unduly expansive and unpredictable." *See id.* at 13.

Nor is SGBL correct in claiming that judicial efficiency concerns should foreclose the exercise of specific personal jurisdiction here. *See* SGBL Letter Br. at 13–14. It complains that the possible inconvenient location of witnesses and of evidence will impair judicial efficiency as well as burden SGBL as a litigant. *Id.* at 13. But, as explained above, these concerns are adequately abated by modern technology.

And although SGBL also emphasizes its view that it is "simply unfair" to force the company "to litigate Plaintiffs' claims almost ten years after the transaction (and 15 years after their alleged injuries)," SGBL Letter Br. at 14, legislative bodies in the United

States have adopted lengthy statutes of limitations in terrorism cases to help enable victims to recover damages from responsible parties. *See* 18 U.S.C. § 2335(a) (establishing 10-year limitations period under the ATA). In these circumstances, allowing the case to proceed hardly strikes us as unfair. Rather, we agree with Plaintiffs that it would be a truly unfair outcome and would hinder the efficient administration of justice to deny them a New York forum in the circumstances presented here. And in our view, due process presents no bar.

### 5. Policy considerations

Finally, SGBL insists that LCB's contacts cannot be imputed to it for personal jurisdiction purposes because the two banks are not "one" or "the same entity," as in the case of statutory mergers, de facto mergers, parent-subsidiary relationships, or corporate reorganizations. *See* SGBL Letter Br. at 9–11.[20] In essence, it asks us to create a rule denying specific personal jurisdiction over a successor entity if the successor and predecessor are not effectively one another's alter egos.

Such a rule would require the Court to close its eyes to the reality of the relationship between these two banks. But "for personal jurisdiction, we look through form to substance." *Oklahoma Firefighters Pension & Ret. Sys.*, 92 F.4th at 456–57. Although LCB still formally exists as a separate entity, SGBL's acquisition resembles a merger in key respects.[21] As this Court has previously explained, "a distinguishing feature" between "a merger" and a simple asset purchase is that, under the former, the merged entity "is subject to all the liabilities of the acquired companies." *U.S. Bank Nat'l*

---

[20] SGBL does not present the arguments discussed here as matters of "policy" in its letter brief, *see* SGBL Letter Br. at 14, but these are policy arguments, no matter how framed.

[21] We note, indeed, that the record excerpt of the Agreement provides that it was entered into under the "Facilitating Bank Merger" law of Lebanon, a fact that the parties have neither highlighted nor explained. App'x at 61.

*Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 155–56 (2d Cir. 2019) (quoting James D. Cox & Thomas Lee Hazen, 4 Treatise on the Law of Corporations § 22:8). That is no distinction here, however, where SGBL expressly acquired all of LCB's liabilities.

As courts applying successor liability theories have described, allowing specific personal jurisdiction in this setting helps to prevent abuse of the corporate form by wrongdoers and helps maintain legitimate avenues of recourse for plaintiffs. *See Ostrem*, 841 N.W.2d at 897 (warning against a rule that would allow "corporations and other entities . . . to shirk liability by switching names"); *Stein*, 382 N.C. at 560 (same); *Jeffrey*, 448 Mich. at 195 (same); *Lelchook III*, 41 N.Y.3d at 638. LCB is a distinct legal entity, true. But that separate identity provides cold comfort to Plaintiffs if LCB is judgment-proof, as they allege. As the New York Court of Appeals observed, it makes little sense to require Plaintiffs to jump through the hoops of suing SGBL outside the United States when SGBL voluntarily undertook liabilities that LCB created in this forum. *See Lelchook III*, 41 N.Y.3d at 638 (expressing concern against "'catch me if you can' gamesmanship," if Plaintiff's sole remedy is to sue SGBL in other jurisdictions).

SGBL presses further that permitting successor liability is unnecessary, because a fraudulent asset-and-liability purchase "may constitute fraud within or on the State of New York," which would independently constitute a forum contact; therefore, it reasons, a bright line rule would not allow bad actors to exploit a ruling that denies jurisdiction here. SGBL Letter Br. at 7–8. But still, as described, such a ruling would leave Plaintiffs with a less favorable forum, an additional burden of showing fraud, and claims "perhaps . . . significant[ly]" reduced in value. *Lelchook III*, 41 N.Y.3d at 638. If we were to hold for SGBL, a predecessor facing substantial liability in New York could render itself effectively judgment-proof even where no fraud occurs. In fact, we reject any formal distinction between cases involving statutory and de facto mergers, or corporate alter egos and reorganizations, on the one hand, and cases involving the

31

wholesale assumption of assets and liabilities in a way that would needlessly redound to the benefit of wrongdoers, on the other. Such an outcome would not further the goal of "substantial justice."

*     *     *

Although SGBL doubtless faces a burden in being required to litigate in New York, it is a manageable and not unfair burden, and all of the remaining "reasonableness factors" favor Plaintiffs. We conclude that the exercise of specific personal jurisdiction over SGBL in New York does not offend traditional notions of fair play and substantial justice.

## CONCLUSION

Under New York law, SGBL's purchase of LCB's assets and liabilities means that it also acquired LCB's jurisdictional status. SGBL's decision to enter into the Agreement satisfies the "purposeful availment" requirement of our due process assessment; it was foreseeable at the time of purchase that the Agreement would render SGBL subject to suit in New York on the claims asserted here; and considerations of fair play and substantial justice support the district court's exercise of specific personal jurisdiction over SGBL in New York.

We therefore conclude that New York law allows and due process permits the exercise of specific personal jurisdiction over SGBL as LCB's successor.

For the foregoing reasons, we **VACATE** the order of the district court dismissing this action and **REMAND** for further proceedings consistent with this decision.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

32